IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LOI NGUYEN,

              Plaintiff,

vs.                                  Case No. 09-1114-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

              Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are

not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors

(the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 30, 2008, administrative law judge (ALJ) William H. Rima issued his decision (R. at 13-19). Plaintiff alleges that she has been disabled since August 15, 2004 (R. at 13). Plaintiff is insured for disability insurance benefits through December 31, 2009 (R. at 15). At step one, the ALJ determined that plaintiff has not performed substantial gainful

4

activity since August 15, 2004, the alleged onset date of disability (R. at 15). At step two, the ALJ found that plaintiff has a number of medically determinable impairments, but further found that none of these impairments were severe impairments, either singly or in combination (R. at 15). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 18).

**III. Does substantial evidence support the ALJ's determination at step two that plaintiff does not have a severe impairment or combination of impairments?**

At step two, the ALJ found that plaintiff had medically determinable impairments of: cerebrovascular accident with left side weakness, hypertension, diabetes, and depressive disorder not otherwise specified (R. at 15). However, the ALJ further determined that plaintiff did not have a severe impairment or combination of impairments (R. at 15-18).

The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). An impairment is severe if it significantly limits a claimant's ability to perform basic work activities. Wall v. Astrue, 561 F.3d 1048, 1052 (2009). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir.

5

1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[1]  Williams, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment(s) would have on his or her ability to work.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment

---

[1]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a), § 416.913(a). Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

Medical opinion evidence included a consultative examination performed by Dr. Miller on February 12, 2007 (R. at 162-164). The ALJ discussed this examination in his decision, noting the following findings by Dr. Miller:

> Physical examination on February 12, 2007 showed 4/5 motor strength in her left upper extremity and her left lower extremity and 5/5 on the right side. Although the claimant's gait was noted to be slow and unsteady with a cane, there was no swelling, heat, or erytherma in her extremities. There were no sensory deficits.
>
> .....
>
> The consultative examination showed that the claimant was only slight limited on her left side.

(R. at 17). Plaintiff argues that the ALJ failed to reference or discuss numerous findings contained in Dr. Miller's report which would indicate the presence of a severe impairment (Doc. 10 at 9; Doc. 15 at 2).

The report from Dr. Miller made the following neurological findings:

> ...Reflexes are normal and 2+ symmetrically

7

>           except for left knee of +1/4. Strength 5/5
>           for right upper and lower extremities but 4/5
>           for left upper and lower extremities. No
>           sensory deficits. Patient is unable to
>           perform adequate dorsiflexion[2] and
>           plantarflexion[3], tandem walk,[4] and has
>           difficulty getting on and off the exam table.
>           Unsteady Romberg. Unsteady gait with her
>           cane. Her gait is slow, shuffled and wide.
>           She has difficulty performing finger to nose
>           with her left finger.

(R. at 163). Dr. Miller indicated that all musculoskeletal findings were negative, and noted that she can pick up a coin, write her name, and open a door. Dr. Miller also found that plaintiff had a reduced range of motion with her left wrist and little or no range of motion with her left ankle/foot (R. at 163).

The record also includes a medical source statement-physical from Dr. Shahzad, plaintiff's treating physician, dated July 2, 2008. Dr. Shahzad found that plaintiff had significant physical limitations. Dr. Shahzad limited plaintiff to lifting and/or carrying less than 5 pounds, sitting for less than 1 hour in an 8

---

[2]Dorsiflexion is flexion of the foot in an upward direction. <u>Merriam-Webster's Medical Dictionary</u> (2006 at 202).

[3]Plantar flexion is movement of the foot that flexes the foot or toes downward. <u>Merriam-Webster's Medical Dictionary</u> (2006 at 581).

[4]Tandem walk quantifies characteristics of gait as the patient walks heel to toe. The tandem walk test tends to be more specific to impairments affecting balance. (http://resourcesonbalance.com/neurocom/protocols/functionalLimitation/tw.aspx (June 16, 2010).

8

hour workday, and standing and/or walking for less than 1 hour in an 8 hour workday. Dr. Shahzad also indicated that plaintiff can never climb, stoop, kneel, crouch, crawl, and must avoid any exposure to extreme heat or cold, vibrations, hazards, and heights. Plaintiff is also limited to occasional balancing, reaching, and handling (R. at 230-231).

The ALJ noted that Dr. Shahzad indicated that plaintiff had significant limitations. However, the ALJ gave "little" weight to his opinions because there was "no objective evidence to support the significant limitations indicated by Dr. Shahzad" (R. at 17). The ALJ noted that plaintiff complained of left side weakness only a few times in her visits to Dr. Shahzad, and the ALJ further noted that "nothing in the record indicates that the claimant had significant problems" (R. at 17).

SSR 85-28 (Medical impairments that are not severe) states the following:

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.
>
> ..........
>
> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly

> the effect of an impairment or combination of
> impairments on the individual's ability to do
> basic work activities, the sequential
> evaluation process should not end with the
> not severe evaluation step. Rather, it should
> be continued.

1985 WL 56856 at *3, 4.[5] The step two requirement is generally considered a de minimis screening device to dispose of groundless claims; thus, reasonable doubts on severity are to be resolved in favor of the claimant. Field v. Astrue, 2007 WL 2176031 at *4 (D. Kan. June 19, 2007); Brant v. Barnhart, 506 Fed. Supp.2d 476, 482 (D. Kan. 2007); Samuel v. Barnhart, 295 F. Supp.2d 926, 952 (E.D. Wis. 2003); see Church v. Shalala, 1994 WL 139015 at *2 (10th Cir. April 19, 1994)(citing to SSR 85-28, the court stated that step two is an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint); Newell v. Commissioner of Social Security, 347 F.3d 541, 547 (3rd Cir. 2003)(reasonable doubts on severity are to be resolved in favor of the claimant).

The court shall examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis determine if the substantiality of the evidence test has been met. Degan v. Barnhart, 314 F. Supp.2d 1077, 1082 (D. Kan. 2004). It is

---

[5]SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

10

improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position, while ignoring other evidence. Carpenter v. Astrue, 537 F.3d 1264, 1265 (10th Cir. 2008); Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004). The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects. Clifton v. Chater, 70 F.3d 1007, 1009-1010 (10th Cir. 1996); see Carpenter, 537 F.3d at 1266. The court must make sure that the ALJ gave the relevant evidence due consideration. Andersen v. Astrue, 319 Fed. Appx. 712, 721 (10th Cir. Apr. 3, 2009).

The ALJ found that plaintiff does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities (R. at 15, 16). The ALJ did acknowledge that plaintiff's gait was noted to be slow and unsteady with a cane (R. at 17), however, the ALJ did not mention in his decision that Dr. Miller also found that plaintiff was unable to adequately move her feet or toes in an upward or downward direction, had an inadequate tandem walk, and had difficulty getting or and off the exam table. The ALJ also

failed to mention that Dr. Miller found that plaintiff had a reduced range of motion with her left wrist and little or no range of motion with her left foot/ankle.

In order to deny a claim at step two, the evidence must show that plaintiff's impairments, when considered in combination, do not have more than a minimal effect on the person's ability to perform basic work activities. Such a finding must be clearly established by the medical evidence. Basic work activities include standing and walking. Dr. Miller's report indicated that plaintiff's gait is slow and unsteady with a cane. He further found that plaintiff was unable to adequately flex her feet and toes, had an inadequate tandem walk, and had difficulty getting off the exam table. Plaintiff also had little or no range of motion with her left foot/ankle. Except for mentioning Dr. Miller's finding that plaintiff's gait was slow and unsteady with a cane, the ALJ failed to mention the other impairments found by Dr. Miller. Most of the impairments contained in Dr. Miller's report would presumably have some effect on plaintiff's ability to stand and/or walk.

In the case of Church v. Shalala, 1994 WL 139015 at *1-2 (10th Cir. April 19, 1994), the ALJ found that plaintiff's impairments, including his mental problems, were not severe at step two. In making his finding that claimant's alleged mental impairments would have no more than a minimal impact on his

mental ability to perform basic work activities, the ALJ relied on the report of Dr. Calenzani. Dr. Calenzani's report neither mentioned basic work activities, nor related claimant's alleged impairments to them. Dr. Calenzani did report that claimant demonstrated depressed mood, low self-image, low self-esteem, questionable judgment, and poor impulse control. The court found that these characteristics would "presumably have some effect" on claimant's ability to perform certain basic work activities, and held that the ALJ's conclusion that claimant's alleged mental impairment has no more than a minimal effect on his ability to perform basic work activities is not supported by Dr. Calenzani's report.

According to SSR 85-28, unless a finding that claimant's impairments do not have more than a minimal effect on the person's ability to perform basic work activities is clearly established by the medical evidence, the adjudication must continue through the sequential evaluation process. The ALJ failed to mention impairments listed in Dr. Miller's evaluation which would presumably have some impact on plaintiff's ability to stand and/or walk, including a finding that plaintiff had little or no range of motion with her left foot/ankle, and was unable to adequately flex her feet and toes.

As noted above, reasonable doubts on severity at step two of the sequential evaluation process are to be resolved in favor of

the claimant.  The impairments noted in Dr. Miller's report would presumably have some effect on plaintiff's ability to perform basic work activities, particularly the ability to stand and/or walk.  In light of the ALJ's failure to discuss many of the findings of Dr. Miller, or indicate why those findings do not impact plaintiff's ability to perform basic work activities, the court cannot say that the ALJ's finding that plaintiff has no impairment or combination of impairments that significantly limit her ability to perform basic work activities is clearly supported by the medical evidence.

The ALJ also gave little weight to the opinions of Dr. Shahzad because there was "no objective evidence to support the significant limitations" found by Dr. Shahzad and that "nothing in the record indicates that the claimant had significant problems" (R. at 17).  Among the limitations included by Dr. Shahzad in his report was his opinion that plaintiff could stand and/or walk for less than 1 hour in an 8 hour workday (R. at 230).  However, the ALJ failed to discuss many of the impairments set forth by Dr. Miller, or whether the impairments found by Dr. Miller might provide some support for the opinion of Dr. Shahzad regarding plaintiff's ability to stand and/or walk.  Therefore, when this case is remanded, the ALJ must not consider the opinions of a treating source in isolation, but this opinion must be considered in light of the entire evidentiary record,

14

including the consultative examination of Dr. Miller. The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other medical sources, and the need for the ALJ to take this into consideration. Miller v. Astrue, Case No. 09-1086-JTM (D. Kan. April 2, 2010, Doc. 20 at 18-19); see Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

Plaintiff also alleges error by the ALJ in his finding that plaintiff's mental impairment was not a severe impairment. The ALJ acknowledged that plaintiff had a medically determinable mental impairment, but concluded that it was not severe (R. at 17-18). The key medical opinion evidence regarding plaintiff's mental impairment is a consultative examination by Dr. Moeller. Dr. Moeller concluded as follows:

> However, other than the physical impairment which would limit her activities, I was not able to determine any psychological impairments that rose the level of disabling her from performing simple, repetitive work within any physical limits set for her.

(R. at 158). Dr. Moeller also assigned plaintiff a GAF of 51[6]

---

[6]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic

15

(R. at 158).

Dr. Moeller's report did not address the question of whether plaintiff has a severe mental impairment, but only addressed the ultimate issue of her ability to work. Dr. Moeller did not make any findings that could reasonably indicate that plaintiff has an impairment(s) that would have more than a minimal effect on her ability to do basic work activities. In addition, a GAF score of 51 is not clearly determinative of the issue of the presence or lack of a severe mental impairment.[7] In light of the absence of any medical evidence that plaintiff has a severe mental impairment, the court finds no clear error by the ALJ in his

---

attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

[7]Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. A claimant's impairment might lie solely with the social, rather than the occupational sphere. A GAF score of fifty or less, however, does suggest an inability to keep a job. For this reason, such a GAF score should not be ignored. Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004). Because a GAF score may not relate to a claimant's ability to work, the score, standing alone, without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities. See Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15, 2004). GAF scores are not considered absolute determinants of whether or not a claimant is disabled. Heinritz v. Barnhart, 191 Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).

16

analysis of plaintiff's mental impairment.

However, the court has already determined that this case should be remanded for further consideration of the medical evidence pertaining to the severity of plaintiff's physical impairments. According to SSR 85-28, the possibility of several physical or mental impairments combining to produce a severe impairment must be considered. The ALJ must assess the impact of the combination of a claimant's impairments on the person's ability to function, rather than assess separately the contribution of each impairment to the restriction of his or her activity as if each impairment existed alone. 1985 WL 56856 at *3. Therefore, on remand, at step two the ALJ shall consider plaintiff's physical and mental impairments in combination.

Finally, plaintiff argues that the ALJ erred in his analysis of plaintiff's credibility when making his findings at step two. The court will not reach this remaining issue because it may be affected by the ALJ's resolution of the case on remand after determining what weight should be accorded to the opinions of plaintiff's treatment providers and examining medical sources. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 28th day of June, 2010, Topeka, Kansas.


                             s/ Sam A. Crow
                             Sam A. Crow, U.S. District Senior Judge